# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JODY EDELMAN,<br>  Petitioner | :<br>:<br>:  No. 1:20-cv-01040 |
| v. | :<br>:  (Judge Kane) |
| WARDEN ERIC BRADLEY,<br>  Respondent | :<br>: |

## AMENDED MEMORANDUM[1]

On June 22, 2020, pro se Petitioner Jody Edelman ("Petitioner"), who is presently incarcerated at the United States Penitentiary Canaan in Waymart, Pennsylvania ("USP Canaan"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Petitioner paid the requisite filing fee on July 8, 2020. In an Order dated July 13, 2020, the Court directed Respondent to show cause why Petitioner should not receive the relief requested. (Doc. No. 5.) Respondent filed his response on July 28, 2020. (Doc. No. 7.) Petitioner filed neither a traverse nor a motion seeking an extension of time to do so. Accordingly, in a Memorandum and Order dated August 19, 2020, the Court dismissed Petitioner's § 2241 petition. (Doc. Nos. 8, 9.)

Subsequently, the Court received from Petitioner a letter dated August 24, 2020. (Doc. No. 10.) In that letter, Petitioner maintained that he did not receive Respondent's response until one (1) day after he received the Court's August 19, 2020 Memorandum and Order. (Id. at 1.) Petitioner further alleged that he had only received half of the response and requested a new copy and to be provided "sufficient time to respond to the same." (Id. at 1-2.) In an Order dated

---

[1] The purpose of this Amended Memorandum is to address Petitioner's traverse (Doc. No. 12), filed on September 21, 2020, and Respondent's response thereto (Doc. No. 14), filed on September 23, 2020. This Amended Memorandum and accompanying Order also serves to protect Petitioner's appellate rights.

August 31, 2020, the Court directed the Clerk of Court to mail Petitioner a copy of Respondent's response and directed Petitioner to file his traverse within twenty-one (21) days. (Doc. No. 11.) The Court noted that it would reconsider its August 19, 2020 Memorandum and Order once Petitioner filed his traverse. (Id. at 2.)

Petitioner filed his traverse on September 21, 2020. (Doc. No. 12.) In an Order dated that same day, the Court concluded that a response from Respondent would aid in the final resolution of Petitioner's § 2241 petition. (Doc. No. 13.) The Court, therefore, directed Respondent to file a response to the traverse within ten (10) days. (Id.) Respondent did so on September 23, 2020. (Doc. No. 14.) Upon consideration of all filings in the above-captioned case, including Petitioner's response and Respondent's response thereto, the Court will once again deny Petitioner's § 2241 petition.

**I. BACKGROUND**

As noted by Respondent, "[Petitioner] has an extensive history of criminal convictions and recidivism." (Doc. No. 7 at 2.) The United States Court of Appeals for the Second Circuit has set forth the following summary of Petitioner's criminal history:

> In 1993 [Petitioner] was convicted in federal court of conspiracy to possess with intent to distribute cocaine, receiving a sentence of seven years' imprisonment followed by three years of supervised release. On July 9, 2002 he pled guilty in state court to possession of a controlled substance, receiving a sentence of six years to life imprisonment. On September 25, 2007, after his release from state custody, [Petitioner] began serving his federal supervised release, at which time he was also subject to lifetime parole supervision with New York State due to his state law possession conviction. In early 2008, on two separate occasions, [Petitioner] was arrested and charged with misdemeanors, which led to New York State filing a parole violation and remanding [Petitioner] to state custody.
>
> As a result of [Petitioner's] parole violation, the New York State Parole Board and United States Parole Board jointly recommended that the district court impose more restrictive conditions on his supervised release. On March 25, 2008 [Petitioner] signed a waiver agreeing to a modification of the terms of his supervised release,

which provided that [Petitioner] would reside in a residential reentry facility for a period of five months. It also stated:

> You shall submit your person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, which or without a warrant, by any federal probation officer, or to any other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by you. Any items seized may be removed to the Probation Office or to the office of their designee for a more thorough examination.

On April 21, 2008 the district court imposed the modifications agreed to in the waiver. On May 30, 2008, in a state proceeding, [Petitioner] agreed to have his parole revoked and then restored on the condition that he abide by the conditions, including modifications, of his supervised release. On June 6, 2008 [Petitioner] began his placement at the Syracuse Pavilion Residential Reentry Center ("Pavilion") in Syracuse, New York, a facility designated by the Department of Justice as a residential reentry facility or halfway house.

At Pavilion, [Petitioner] received an "Orientation Checklist" that set forth the facility's rules. The Checklist stated, inter alia, that residents could not leave without notifying staff; could only leave the building for up to 12 hours at a time; and could not combine work, leisure, or other activities, but instead had to return to the facility and sign out separately before each activity. It also provided that "[r]esidents are subject to search of their persons and property by staff at any time."

On August 29, 2008 [Petitioner] walked past Pavilion's entrance monitor, left, and never returned. On September 16, 2008 the district court issued an arrest warrant, and on October 2, 2008, following a tip from a confidential source, the United States Marshals arrested [Petitioner] in the lobby of the Skyline Apartments in Syracuse. Officers found a set of apartment keys on [Petitioner] during his arrest. After investigation, the Marshals determined that the keys opened Apartment 509, an apartment legally leased by Adrienne Iauco, who had verbally agreed to sublet the apartment to [Petitioner]. With Iauco's consent, but without a search warrant, officers entered Apartment 509, where they found evidence of drug trafficking in plain view. Later that day, officers executed a search warrant and then returned to the apartment, where they found drugs, packaging material, and paraphernalia. On October 10, 2008 the Drug Enforcement Administration, after receiving information from a relative of [Petitioner's], returned to Apartment 509 and found $12,000 in currency along with two credit cards in [Petitioner's] name.

United States v. Edelman, 726 F.3d 305, 307-08 (2d Cir. 2013).

Petitioner was subsequently indicted in the Northern District of New York with possession with intent to distribute 100 grams or more of heroin, possession with intent to distribute 500 grams or more of cocaine, possession with intent to distribute 50 grams or more of cocaine base, and escape from the Syracuse Pavilion.  See id. at 308.  A jury convicted Petitioner of all four (4) counts, and he was sentenced to 200 months' imprisonment.  See id.  In 2013, the Second Circuit affirmed the district court's judgment, specifically concluding that Petitioner's residence at the Syracuse Pavilion satisfied the "in custody" requirement for an escape conviction under 18 U.S.C. § 751(a).  See id. at 308-10.  Petitioner subsequently filed a motion to vacate pursuant to 28 U.S.C. § 2255, which the United States District Court for the Northern District of New York denied.  See United States v. Edelman, No. 5:09-cr-40 (N.D.N.Y.) (Doc. Nos. 155, 190.)  In 2015, the court reduced Petitioner's sentences for his drug convictions to 160 months' incarceration for each, to still be served concurrently with his escape sentence, pursuant to retroactive sentencing guidelines changes made by the United States Sentencing Commission.  See id.; Doc. No. 163.

On October 7, 2019, Petitioner filed a motion for leave to file a second or successive § 2255 motion with the Second Circuit.  See Edelman v. United States, No. 19-3221 (2d Cir.) (Doc. Nos. 1-2.)  Petitioner asserted that he was now actually innocent of the § 751(a) conviction pursuant to the Supreme Court's recent decision in Rehaif v. United States, 139 S. Ct. 2191 (2019).  (Id.)  In Rehaif, the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."  See Rehaif, 139 S. Ct. at 2200.  Petitioner asserted that under Rehalf, he did not "'knowingly' escape from federal custody as charged."  See Edelman, No. 19-3221 (Doc. No. 1-

2 at 7). On November 4, 2019, the Second Circuit denied Petitioner's motion, concluding that Petitioner "ha[d] not made a prima facie showing that the requirements of § 2255(h) are satisfied." See id.; Doc. No. 20. Specifically, the Second Circuit concluded that "Rehaif presented a question of statutory interpretation rather than constitutional rights and, in any event, has not been made retroactively applicable to cases on collateral review." See id.

In his § 2241 petition, Petitioner again raises his Rehaif claim, arguing that he is actually innocent of violating § 751(a) because he did not "knowingly" escape from federal custody. (Doc. No. 1 at 1.) According to Petitioner, he did not knowingly do so because "he was never informed that the agreed upon modification of his supervised release conditions to 'reside' at the Syracuse Pavilion actually changed his 'status' from that of a probationer released from custody to that of a person placed back into federal custody." (Id. at 11.) As relief, Petitioner asks that the Court vacate his conviction and sentence for the escape charge. (Id. at 18.)

## II.   DISCUSSION

Respondent asserts that Petitioner's § 2241 petition should be dismissed pursuant to the concurrent sentence doctrine. (Id. at 6.) Under that doctrine, "a federal court may decline to review an alleged error where concurrent sentences were imposed on separate counts, where the alleged error is associated with only one count, and where the remaining sentences are unassailable." See Nosov v. Schuylkill, 634 F. App'x 379, 380 (3d Cir. 2016). Because "the defendant remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility. The practice is eminently practical and conserves judicial resources for more pressing needs." See Jones v. Zimmerman, 805 F.2d 1125, 1128 (3d Cir. 1986). This doctrine, however, should be applied "only when it is apparent that the defendant will not suffer collateral consequences from the unreviewed conviction." See Nosov, 634 F. App'x at 380.

As noted supra, in addition to his sentence for his escape conviction, Petitioner is serving a concurrent sentence of 160 months' incarceration for his three (3) drug convictions. In his traverse, Petitioner argues that he can demonstrate collateral consequences because his "escape conviction is tied to his drug convictions." (Doc. No. 12 at 2.) Petitioner argues that the district court's "holding that [he] had 'escaped' directly resulted in the denial of his motion to suppress the drug evidence supporting his drug convictions." (Id.) Petitioner asserts that if his escape conviction is vacated, he "will be able to attack the rulings of his motion to suppress on the ground that those rulings erroneously assumed that Petitioner had knowingly escaped under [18 U.S.C. § 751(a)]." (Id. at 3.) Petitioner maintains further that his escape charge "led to [him] being shackled during his trial over his objection." (Id.)

The Court agrees with Respondent that Petitioner has not demonstrated that he would suffer any collateral consequences arising from his challenged conviction, let alone any collateral consequences that rise to the level of "custody" for purposes of § 2241. See Gardner v. Warden Lewisburg USP, 845 F.3d 99, 104 (3d Cir. 2017). As an initial matter, Petitioner's objection to his being shackled at trial is plainly insufficient to establish collateral consequences when such shackling occurred at his trial in 2012, eight (8) years ago. Moreover, with respect to Petitioner's assertion that his escape conviction tainted his drug convictions, Petitioner overlooks the fact that on direct appeal, the Second Circuit concluded that the district court properly denied Petitioner's motion to suppress evidence. See Edelman, 726 F.3d at 310. As the Second Circuit noted, Petitioner did not have an objectively reasonable expectation of privacy in the apartment because "[a]s a condition of both (i) the modification of his supervised release and (ii) his residence at the halfway house, [Petitioner] agreed to subject himself to search of his person and property 'at any time.'" See id. In his traverse, Petitioner argues that "the warrantless search of

the apartment—which formed the basis for [his] drug convictions—was not conducted pursuant to any condition of Petitioner's term of supervised release or parole." (Doc. No. 12 at 3.) A review of Petitioner's criminal proceedings, however, indicates that when his supervised release was modified, the following condition was included:

> You shall submit your person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any federal probation officer, or any other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by you.

United States v. Edelman, No. 5:93-cr-205 (N.D.N.Y.) (Doc. No. 86). As the Second Circuit noted, "[p]ersons on supervised release who sign [waivers] manifest an awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy." See Edelman, 726 F.3d at 310 (quoting United States v. Newton, 369 F.3d 659, 665 (2d Cir. 2004)). Thus, as previously determined in Petitioner's direct appeal and post-conviction proceedings, his drug convictions and sentences are valid, meaning that Petitioner must still serve these sentences regardless of the validity of his escape conviction. See Logan v. Dist. Att'y Allegheny Cty., 752 F. App'x 119, 122 (3d Cir. 2018) (noting that "[o]nly one [of the petitioner's convictions] will be abrogated if his petition is successful and any potential relief would not reduce the time he is required to serve"). Under these circumstances, the Court concludes that it is appropriate to invoke the concurrent sentence doctrine and, therefore, dismiss Petitioner's § 2241 petition.[2]

---

[2] Respondent argues further that the Court should dismiss Petitioner's § 2241 petition for lack of subject-matter jurisdiction because he fails to state a claim of actual innocence. (Doc. No. 7 at 6.) In light of the Court's conclusion that Petitioner's § 2241 petition is subject to dismissal pursuant to the concurrent sentence doctrine, the Court declines to address Respondent's alternate argument.

## III.   CONCLUSION

Based on the foregoing, the Court will again dismiss Petitioner's § 2241 petition.  (Doc. No. 1.)  An appropriate Order follows.